**Louie MORRIS, Plaintiff–Appellee– Cross–Appellant,**

v.

**CITY OF HOBART, Defendant– Appellant–Cross–Appellee.**

**Nos. 93–6150, 93–6184.**

United States Court of Appeals, Tenth Circuit.

Nov. 4, 1994.

---

Eric S. Eissenstat (Greg A. Castro, of
Fellers, Snider, Blankenship, Bailey & Tip-
pens, with him on the briefs), of Fellers,
Snider, Blankenship, Bailey & Tippens, Okla-
homa City, OK, for defendant-appellant-
cross-appellee.

Mark Hammons, of Hammons & Associates, Inc., Oklahoma City, OK, for plaintiff-appellee-cross-appellant.

Before TACHA and KELLY, Circuit Judges, and VRATIL,* District Judge.

TACHA, Circuit Judge.

## I. Background

In 1986 plaintiff Louie Morris filed suit in federal court against the City of Hobart, alleging that the City had discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 (hereinafter the "Title VII lawsuit"). In July 1987, the parties reached a settlement. The trial judge was advised of the settlement and entered an Administrative Closing Order in the court docket.[1] On September 30, 1987, plaintiff filed a document entitled "Dismissal with Prejudice" with the clerk of the court; the clerk filed this document in the court docket on the same day.

On August 15, 1991 plaintiff again filed suit against defendant in federal court, claiming that defendant breached the settlement agreement. The district court found for plaintiff and entered judgment in the amount of $12,502.72. Defendant appeals, claiming that the district court lacked jurisdiction and that the court erred on the merits of its decision. Plaintiff cross appeals the district court's refusal to award him prejudgment interest. Because we conclude that the district court lacked subject matter jurisdiction to enforce the settlement agreement, we dismiss the case and do not address the merits of the appeal or cross appeal.

## II. Preliminary Issues

■ When plaintiff filed this second action to enforce the settlement agreement, defen-

dant moved to dismiss for lack of subject matter jurisdiction. The district court denied the motion, and defendant renews its jurisdictional objections on appeal. We review a challenge to subject matter jurisdiction de novo. *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991).

The district court found that it had subject matter jurisdiction over this dispute pursuant to our decision in *Snider v. Circle K Corp.*, 923 F.2d 1404 (10th Cir.1991). In addition to agreeing with the district court's holding in this regard, plaintiff asserts an alternative basis for federal court jurisdiction. Specifically, plaintiff alleges that the Title VII lawsuit was never effectively dismissed, so that the lawsuit remained pending at the time plaintiff filed suit to enforce the settlement agreement. Because the district court retained jurisdiction over the Title VII lawsuit, plaintiff argues that it also had jurisdiction to enforce the settlement agreement. We first address plaintiff's assertion that the original Title VII lawsuit was never dismissed. Finding that the Title VII lawsuit was dismissed, we then address whether the district court had ancillary jurisdiction or an independent basis for subject matter jurisdiction.

## III. Disposition of Title VII Lawsuit

■ Plaintiff first asserts that the district court has jurisdiction over the settlement agreement because the Title VII lawsuit was never dismissed. So long as a case is pending, he argues, the district court retains the power to enforce such a settlement agreement. We need not address the merits of plaintiff's contention, however, because we conclude that the Title VII lawsuit was dismissed.

---

* The Honorable Kathryn H. Vratil, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. The order reads:

It appearing that these proceedings are held in abeyance pursuant to the settlement and compromise affected [sic] by the parties,

IT IS ORDERED that the clerk Administratively terminate this action in his records without prejudice to the rights of the parties to reopen the proceedings for good cause shown,

for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation. If within 60 days hereof, the parties have not reopened for the purpose of obtaining such a final determination, the action will be deemed dismissed with prejudice.

IT IS SO ORDERED this 30th day of July, 1987.

The order further states that it was entered in the Judgment Docket on July 30, 1987.

■ Dismissals of lawsuits are governed by Rule 41 of the Federal Rules of Civil Procedure. Rule 41(a) provides two ways for a plaintiff to dismiss a case voluntarily after the defendant has filed an answer or a motion for summary judgment. The first method requires the filing of a stipulation of dismissal signed by all parties who have appeared in the action. Fed.R.Civ.P. 41(a)(1)(ii). This method normally is used when the parties have reached a settlement of the suit. In this case, although the parties reached a settlement on July 15, 1987, no written stipulation of dismissal signed by all parties was ever filed. Although, under certain circumstances, an oral stipulation by the parties in court may satisfy the requirements of Rule 41(a)(1)(ii),[2] in this case the record is not clear enough for us to find that the Title VII lawsuit was dismissed pursuant to an oral stipulation by the parties in court. The document that plaintiff filed on September 30, 1987—entitled "Dismissal with Prejudice"—was not a Rule 41(a)(1)(ii) stipulation because it was signed only by plaintiff. Thus, the Title VII lawsuit was not dismissed in accordance with the requirements of Rule 41(a)(1)(ii).

■ The second method of dismissal under Rule 41(a) allows the court to dismiss the case at the plaintiff's instance, upon such terms and conditions as the court deems proper. Fed.R.Civ.P. 41(a)(2). Rule 41(a)(2) does not require that the plaintiff's request for dismissal take any specific form; it requires only that the court approve such a request for dismissal. *See United Steelworkers v. Libby, McNeill & Libby, Inc.*, 895 F.2d 421, 422 n. 1 (7th Cir.1990) (finding that dismissal was pursuant to Rule 41(a)(2) because of the "circumstances surrounding the dismissal"); *see also McCall–Bey v. Franzen*, 777 F.2d 1178, 1185 (7th Cir.1985) (case dismissed pursuant to Rule 41(a)(2) although the district court made no reference to it in its order of dismissal).

There is no dispute in the instant case that the parties agreed to a settlement on July 15, 1987, and that the district court was informed of the settlement. After being advised of the settlement, the district court used an administrative closing order to clear the case from its docket. This court has recognized that an administrative closing order, worded similarly to the order here, "by its own terms matured into a dismissal." *Lewis v. B.F. Goodrich*, 850 F.2d 641, 643 (10th Cir.1988) (en banc). *Lewis* did not interpret Rule 41; the issue in *Lewis* was whether we had jurisdiction to consider an appeal of a summary judgment order. *Id.* at 642.

■ A summary judgment order that is not a final decision is not appealable. *See* 28 U.S.C. § 1291. The defendant in *Lewis* appealed a partial summary judgment without having the issue certified for appeal pursuant to Rule 54(b). When the district court subsequently disposed of the remainder of the case with an administrative closing order, the appellant failed to refile a notice of appeal. We nevertheless held that a prematurely filed appeal should not be dismissed for lack of jurisdiction so long as either the appellant subsequently obtains a Rule 54(b) certification or there is a final disposition of the entire case. *Id.* at 645–46. Because the administrative closing order served as the final disposition in *Lewis*, we exercised jurisdiction to hear appellant's claim.

Although *Lewis* did not address whether such an administrative closing order complies with Rule 41(a), the decision implicitly recognized the usefulness of administrative closing orders to district courts with busy dockets. Furthermore, we expressly construed the administrative closing order in *Lewis* as becoming a final judgment sixty days after it was filed. *Id.* at 643 n. 2.

■ We conclude that, under the circumstances of this case, the district court dismissed the Title VII lawsuit in accordance with Rule 41(a)(2). The district court was informed that the parties had settled the case; neither party suggests that the court was misinformed regarding the parties' intentions to discontinue the litigation. The Administrative Closing Order entered by the district court on July 30, 1987, dismissed the case and allowed the parties sixty days to

---

**2.** *See, e.g., Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1199 (10th Cir.1974).

reopen the litigation. Both parties clearly had notice of the consequences of the Administrative Closing Order, and neither party notified the court of difficulties in finalizing the settlement. Moreover, by filing his "Dismissal with Prejudice," plaintiff advised the court that the matter was concluded. We therefore hold that an administrative closing order that notifies the parties that the case will be dismissed with prejudice absent action on their part within a specified period of time is sufficient to terminate a case.

▪ Plaintiff next argues that the Title VII lawsuit was not effectively dismissed because the district court did not comply with Fed.R.Civ.P. 58. Even were we to agree that Rule 58 affects the dismissal, plaintiff's argument fails. Rule 58 requires that the clerk enter a separate document to evidence a final judgment. The purpose of Rule 58 is to clarify the date on which judgment was entered. *Hull v. United States,* 971 F.2d 1499, 1508 (10th Cir.1992) ("[T]he drafters of Rule 58 intended to clarify the time that judgment was entered."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1844, 123 L.Ed.2d 469 (1993). Thus, Rule 58's basic purpose is to set a definite date from which an appeal may be taken. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) ("The sole purpose of the separate-document requirement ... is to clarify when the time for appeal under 28 U.S.C. § 2107 begins to run."). Here, the Administrative Closing Order gave the parties sixty days to reopen the proceedings. As we noted in *Lewis,* such an order "by its own terms [can] mature[ ] into a dismissal ... creating an *appealable final judgment.*" *Lewis,* 850 F.2d at 642–43 (emphasis added). We therefore conclude that an administrative closing order, such as that utilized by the district court in this case, matures into final judgment and, if no action is taken to resolve the case, satisfies the separate document requirement of Rule 58. As a result, we conclude that Rule 58 does not preclude the use of the Administrative Closing Order as a dismissal of the Title VII lawsuit.

## IV. Subject Matter Jurisdiction

Because we hold that the Title VII lawsuit was dismissed pursuant to Rule 41(a)(2), we must analyze other potential bases for subject matter jurisdiction. The district court concluded that it had subject matter jurisdiction pursuant to *Snider v. Circle K Corp.,* 923 F.2d 1404 (10th Cir.1991), stating that the "settlement agreement in the case at bar involved Title VII race discrimination. Accordingly the Court continues to have ancillary jurisdiction to enforce such agreement." We first address whether the district court had ancillary jurisdiction to enforce the settlement agreement, and then we examine whether an independent basis for federal subject matter jurisdiction exists.

### A. Ancillary Jurisdiction

▪ The United States Supreme Court recently considered the jurisdiction of district courts to enforce settlement agreements in dismissed cases. *Kokkonen v. Guardian Life Ins. Co. of America,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Court held that, once the parties to a lawsuit have settled and the district court has dismissed the case, the district court does not have ancillary jurisdiction to enforce the parties' settlement agreement. *Id.* at ——, 114 S.Ct. at 1677. A district court can, however, retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement. *Id.*

▪ Here, the district court did not employ either of the alternatives recognized by *Kokkonen* to retain jurisdiction over the settlement agreement. First, the language of the Administrative Closing Order makes clear the district court's intent to dismiss the case without retaining jurisdiction upon expiration of sixty days; the court clearly did not condition the dismissal on compliance with the settlement agreement. Second, the court's order of dismissal did not incorporate the settlement agreement. Like the appellant in *Kokkonen,* what plaintiff "seeks in this case is enforcement of the settlement agreement, and not merely reopening of the dismissed suit." *Id.* at ——, 114 S.Ct. at 1675. Without reservation by the court, ancillary jurisdiction is unavailable to enforce a settlement agreement; there must be an in-

dependent basis for federal jurisdiction. *Id.* at ——, 114 S.Ct. at 1677.

## B. Independent Basis for Federal Question Jurisdiction

 Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction. *Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir.1994). In the instant case, the parties are not diverse. Therefore, if federal subject matter jurisdiction exists, it must arise under a law of the United States. *See* 28 U.S.C. § 1331. A case arises under federal law if its "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). Thus, a district court may exercise jurisdiction when the cause of action is created by federal law or turns on a substantial question of federal law.

 Plaintiff does not claim that his cause of action is created by federal law. As in *Kokkonen,* "[t]his suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute." *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1677; *see also Lucille v. City of Chicago,* 31 F.3d 546, 548 (7th Cir. 1994) (dismissing the contention that "just because the initial suit sought to vindicate a federal right, the court possesses federal-

question jurisdiction to construe and enforce a contract ending litigation").[3] Consequently, federal jurisdiction will lie only if resolution of this breach of contract claim requires resolution of a substantial question of federal law.

 In *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), the Supreme Court held that federal jurisdiction can be found in state-law created causes of action if the right to relief turns on the construction of a federal law. *Id.* at 199–200, 41 S.Ct. at 244–45. Nevertheless, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). When making the determination of whether a nonfederal claim turns on a substantial question of federal law, courts should exercise "prudence and restraint." *Id.* at 810, 106 S.Ct. at 3233. Restraint is necessary because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.*

 A court examining whether a case turns on a question of federal law should focus on whether Congress evidenced an intent to provide a federal forum. *Id.* at 812, 106 S.Ct. at 3234. Turning to Title VII, we find no suggestion that Congress intended to confer federal question jurisdiction over contract disputes arising out of private settlements.[4] *See Langley v. Jackson State Univ.,*

---

**3.** *But see Fleming v. U.S. Postal Serv.,* 27 F.3d 259, 260 (7th Cir.1994) (stating in dicta that it remains unsettled in the Seventh Circuit whether a dispute over the settlement of a federal case arises under state or federal law), *cert denied,* —— U.S. ——, 115 S.Ct. 741, —— L.Ed.2d —— (1995).

**4.** A number of courts have held that suits involving the breach of conciliation agreements and predetermination settlement agreements negotiated by the Equal Employment Opportunity Commission are "brought under" Title VII. *See Brewer v. Muscle Shoals Bd. of Educ.,* 790 F.2d 1515 (11th Cir.1986); *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503 (11th Cir.1985);

*EEOC v. Henry Beck Co.,* 729 F.2d 301 (4th Cir.1984); *EEOC v. Safeway Stores, Inc.,* 714 F.2d 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2384, 81 L.Ed.2d 343 (1984); *EEOC v. Liberty Trucking Co.,* 695 F.2d 1038 (7th Cir.1982). These courts reasoned that the elaborate statutory scheme under which these agreements were reached illustrates congressional intent to include enforcement of these agreements under section 2000e–5(f)(3). *See* 42 U.S.C. §§ 2000e–5(a) through (e) (for evidence of detail regarding conciliation agreements); *see also Eatmon,* 769 F.2d at 1508–12; *Henry Beck Co.,* 729 F.2d at 303–05; *Safeway,* 714 F.2d at 571–73; *Liberty Trucking,* 695 F.2d at 1041–43. Without adopting the reasoning of these decisions, we find that settlement contracts between private

14 F.3d 1070, 1073 (5th Cir.) ("[W]e cannot find[ ] any indication that Congress has established an administrative structure evidencing its intent to provide a federal forum for private parties to enforce settlement agreements ending discrimination disputes after a lawsuit has been filed."), *cert. denied*, — U.S. —, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994). The jurisdictional grant embodied in Title VII states only that federal courts have jurisdiction over actions "brought under" Title VII. 42 U.S.C. § 2000e–5(f)(3).[5] This case was brought under state contract law, not Title VII.

Our determination of whether subject matter jurisdiction exists also requires us to consider principles of federalism. We hesitate to exercise jurisdiction where the "cause of action is a subject traditionally relegated to state law." *Merrell Dow*, 478 U.S. at 811, 106 S.Ct. at 3233. Because contract actions are traditionally reserved for state courts to resolve, federalism concerns also militate against our exercise of jurisdiction here.

Finally, plaintiff asserts that a substantial question of federal law is at stake in this action because federal common law[6] governs the interpretation of agreements settling civil rights litigation. Plaintiff relies on *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), for the proposition that federal common law governs agreements settling Title VII lawsuits. We do not read *Alexander* so broadly. The *Alexander* court merely stated that "[i]n determining the effectiveness of [a waiver of a plaintiff's right to sue under Title VII], a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing." *Id.* at 52 n. 15, 94 S.Ct. at 1021 n. 15. Quite simply, nothing in *Alexander* could be construed as holding that federal common law governs plaintiff's claim.

### V. Conclusion

We hold that, because an action for breach of contract arising out of the private settlement of a Title VII claim does not arise under federal law, the district court lacked subject matter jurisdiction to enforce the parties' settlement agreement. Accordingly, we remand the case to the district court with instructions to vacate the judgment and DISMISS the case for lack of subject matter jurisdiction.

---

parties do not implicate the same degree of congressional concern.

5. Plaintiff argues that our decision in *Snider v. Circle K Corp.*, 923 F.2d 1404 (10th Cir.1991), supports his contention that the district court had an independent basis for subject matter jurisdiction. We remarked in *Snider* that "a number of courts have concluded that federal courts have jurisdiction over actions brought to enforce Title VII settlement agreements because such actions are 'actions brought under' Title VII." *Id.*

*Snider*, however, did not purport to decide the question of subject matter jurisdiction. Rather, the issue in that case was whether the plaintiff was entitled to a jury trial on her claim that the defendant breached their settlement agreement. We therefore had no occasion to examine the judicial considerations implicated in questions of federal subject matter jurisdiction. We therefore examine the jurisdictional issue in this case without reference to *Snider*.

6. Plaintiff correctly states that federal question jurisdiction can be founded on federal common law as well as statutory law. *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 850, 105 S.Ct. 2447, 2450–51, 85 L.Ed.2d 818 (1985). Plaintiff's claim is for breach of contract, an action created by state law, not federal common law.