**CSU, L.L.C., Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

**No. CIV. A. 94–2102–KHV.**

United States District Court,
D. Kansas.

July 13, 2001.

See also 203 F.3d 1322.

Eric D. Braverman, Employers Reinsurance Corporation, Overland Park, KS, P. John Owen, Lori R. Schultz, Anne C. Wilson, Morrison & Hecker L.L.P., Kansas City, MO, Michael C. Manning, Morrison & Hecker L.L.P., Phoenix, AZ, for plaintiff.

Peter K. Bleakley, Cathy A. Hoffman, Arnold & Porter, Washington, DC, Peter W. Marshall, Xerox Corporation, Stamford, CT, Michael G. Norris, Norris, Keplinger & Herman, L.L.C., Overland Park, KS, C. Larry O'Rourke, E. Robert Yoches, Vincent P. Kovalick, Leslie I. Bookoff, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for defendant.

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

VRATIL, District Judge.

After nearly ten years of litigation, millions of dollars in attorneys' fees and numerous court orders including a final order of dismissal earlier this year, this case now boils down to the choice between (1) a settlement which requires CSU to pay $1.4 million over five years at 8.5% interest and (2) a settlement which requires CSU to pay $1.4 million over two years at 8.5% interest. Xerox—a Fortune 500 corporation with numerous worldwide affiliates—has decided to re-load its litigation weapons to force CSU—a company which annually purchases more than $5 million in Xerox copier parts and pays $1 million in Xerox license fees—to accept the latter choice or file for bankruptcy. Basic finance and business principles, as well as common sense, would appear to dictate against such a strategy. This dispute apparently must proceed, however, because it involves Xerox's arch-enemy in the copier service industry—CSU. In its latest maneuver, Xerox asks the Court to vacate its final judgment and allow the battle to go forward. See Xerox's Motion For Relief From Judgment Or Order (Doc. # 36) filed June 15,

2001. For reasons stated below, the Court overrules in part and defers in part Xerox's motion.[1]

## Factual Background

On March 24, 1992, independent service organizations ("ISOs"), i.e. businesses who serviced Xerox high volume copiers and printers, filed a class action against Xerox. See *R. & D Bus. Sys., et al. v. Xerox Corp.*, No. 2–92–CV–042 (E.D.Tex.). On March 10, 1994, as the parties sought court approval for a settlement in that case, CSU filed a request for exclusion. It also filed the instant action, alleging that Xerox had violated the federal antitrust laws by refusing to sell copier parts and license diagnostic software to ISOs. Xerox filed counterclaims which alleged that CSU had infringed Xerox patents for various copier parts, Xerox copyrights for diagnostic software and service manuals, and Xerox trademarks associated with copying machines.

In March 1997, the parties settled the Xerox trademark infringement claims. See Order (Doc. # 521 in MDL No. 1021) filed March 6, 1997. In a series of rulings, the Court granted summary judgment in favor of Xerox on the CSU antitrust claims and in favor of Xerox on the issue of CSU liability on the patent and copyright infringement counterclaims. See *In re Independent Service Organizations Antitrust Litigation*, 989 F.Supp. 1131 (D.Kan.1997); 1997 WL 450028 (July 17, 1997); 964 F.Supp. 1479 (D.Kan. 1997); 964 F.Supp. 1469 (D.Kan.1997); 964 F.Supp. 1454 (D.Kan.1997). The parties agreed to defer trial of the claims for patent damages until after appeal of the rulings as to patent infringement liability. After a trial to the Court on copyright infringement damages, the Court awarded Xerox copyright infringement damages totaling $1,039,282.00. 23 F.Supp.2d 1242, 1253 (D.Kan.1998). The Court also found that "an award of attorney's fees in this case would serve to make Xerox whole, to deter infringement, to dissuade CSU's disdain for the copyright laws, and to encourage the assertion of colorable copy-

right claims." *Id.* at 1254 (internal quotations and citations omitted). Because of the overlap between attorneys' fees on its copyright and patent claims, Xerox and CSU agreed to defer resolution of the copyright attorneys' fee issue until after trial of the Xerox claim for patent damages.

On January 8, 1999, the Court entered an order which directed the clerk to enter judgment in favor of Xerox on the CSU antitrust claims and the Xerox copyright infringement counterclaims. See Order (Doc. # 722 in MDL No. 1021). The Court noted that its liability ruling on the patent infringement claims, including its rejection of the CSU patent misuse defense, was immediately appealable as of right under 28 U.S.C. § 1292(c)(2). Pursuant to Rule 54(b), Fed. R.Civ.P., the Court certified that there was no reason to delay entry of final judgment on the patent claims until an appeal of the antitrust and copyright claims. On January 11, 1999, the clerk entered judgment in accordance with the Court's order dated January 8, 1999. See Judgment (Doc. # 34 in Case No. 94–2102).

CSU appealed the Court's rulings on the antitrust, patent infringement and copyright infringement claims. On February 17, 2000, the Court of Appeals for the Federal Circuit affirmed. 203 F.3d 1322 (Fed.Cir.2000). On February 20, 2001, the United States Supreme Court denied the CSU petition for a writ of certiorari. —— U.S. ——, 121 S.Ct. 1077, 148 L.Ed.2d 954 (2001).

In March 2001, the parties reached an agreement in principle to settle the remaining claims. Court staff consulted with counsel and, after the 25–day period for filing a petition for rehearing with the Supreme Court had expired, the Court entered the following order:

> Counsel for the parties listed above have orally confirmed they have settled and compromised the claims in this lawsuit.
>
> IT IS THEREFORE ORDERED that the clerk administratively terminate this action

---

1. Xerox asks for a hearing on its motion. The Court finds that oral argument will not materially assist in the disposition of the instant motion. Moreover, no evidentiary hearing is required be-

cause the Xerox motion can be resolved solely on timeliness grounds. Accordingly, Xerox's request for a hearing is overruled.

without prejudice to the rights of the parties to reopen the proceedings for good cause shown, for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation. On or before April 16, 2001, the parties shall file a stipulation of dismissal signed by the parties above who have appeared in the action, under Rule 41(a)(1) of the Federal Rules of Civil Procedure. If no such stipulation is received within the specified time and the parties have not reopened for the purpose of obtaining a final determination, this order shall constitute, for purposes of Rule 58 of the Federal Rules of Civil Procedure, the Court's entry of final judgment of dismissal with prejudice under Rule 41(a)(2).

Order (Doc. # 35) filed March 26, 2001. On March 26, the clerk entered the order on the docket as follows:

ORDER ENTERED: by Judge Kathryn H. Vratil administratively terminating this action without prejudice; On or before 4/16/01, the parties shall file a stipulation of dismissal; if no such stipulation is received within the specified time and the parties have not reopened for the purpose of obtaining a final determination, this order shall be considered the court's entry of final judgment of dismissal terminating case (cc: all counsel) (ck) [Entry date 03/26/01] [Edit date 03/26/01] [2:94cv2102].

The docket entry reflects that the clerk mailed copies of the order to all counsel of record, including four attorneys for CSU and eight attorneys for Xerox. Attorneys of record for Xerox included three law firms and in-house counsel. Xerox claims that two individual attorneys, each associated with Arnold & Porter, did not receive a copy of the order.[2]

Although the parties had not agreed on a final written settlement agreement as of March 26, 2001, neither party asked the Court to reopen the case then, or by the April 16, 2001 deadline. The parties contin-ued to negotiate throughout April and May. In early June, they reached impasse and a final written settlement agreement did not materialize. On June 11, 2001, at the request of plaintiff's counsel, the Court held a telephone hearing on the issue and Xerox announced that it intended to file a motion to vacate the final judgment in this case. On June 15, 2001, Xerox filed its motion. Pursuant to Rule 60(b)(1), Fed.R.Civ.P., Xerox argues that (1) the Court made a substantive mistake of fact in the administrative closing order because Xerox had not confirmed that it had settled the case and (2) to the extent that counsel for Xerox informed the Court that the parties had settled, Xerox made an excusable litigation mistake because counsel was not authorized to settle the case or so inform the Court.

### Analysis

■■ The Court has discretion to grant or deny a motion to vacate judgment under Rule 60(b). See *Fed. Deposit Ins. Corp. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir.1998). Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances. See *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir.1999); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir.1990).

■ The Court need not address the merit of Xerox's arguments, however, because its motion is untimely. CSU argues that the motion is untimely because Xerox did not file it within the time to file a notice of appeal. A Rule 60(b) motion, however, is not intended to be a substitute for a direct appeal. See *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir.1996). Moreover, a Rule 60(b)(1) motion cannot be used to challenge a "substantive ruling" of the Court unless it is filed within the time frame required for filing a notice of appeal. See *id.* at 578. Xerox maintains that this rule applies only to mis-

---

**2.** Xerox maintains that no attorney at Arnold & Porter received a copy of the order. Two attorneys from Arnold & Porter are listed as counsel of record-Mr. Bleakley and Ms. Hoffman. Neither attorney submitted an affidavit in support of the instant motion and Xerox refers only to Mr. Bleakley as a potential recipient of the order.

Xerox relies solely on the affidavit of a partner at Arnold & Porter who asserts that no attorney at the firm who worked on Xerox matters received a copy of the order. CSU does not challenge the affidavit and the Court therefore assumes that neither Mr. Bleakley nor Ms. Hoffman received the order.

takes of law, not mistakes of fact. Although most Tenth Circuit cases which address this issue have involved alleged "mistakes of law" by the district court, see, e.g., *United States v. 31.63 Acres of Land,* 840 F.2d 760, 761 n. 4 (10th Cir.1988) (applying rule to "legal mistakes"); *Orner v. Shalala,* 30 F.3d 1307, 1309–10 (10th Cir.1994) (applying rule to "mistakes of law"); *Van Skiver v. United States,* 952 F.2d 1241, 1244 (10th Cir.1991) (same), cert. denied, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992); *Morris v. Adams–Millis Corp.,* 758 F.2d 1352, 1358 (10th Cir. 1985) (applying rule to "errors of law"), the Tenth Circuit apparently would apply the same principle to Rule 60(b)(1) motions which allege that the district court committed a "mistake of fact." In Cashner, for example, the Tenth Circuit focused on whether the mistake involved a "substantive ruling." See *id.,* 98 F.3d at 578. Cashner does not distinguish mistakes of law and mistakes of fact, but rather distinguishes "judicial mistakes" and mistakes by a party. See *id.* Moreover, in Van Skiver, the Tenth Circuit noted that claims that the district court misunderstood a party's position should be brought on appeal or by a Rule 59(e) motion, not a Rule 60(b)(1) motion. See *id.,* 952 F.2d at 1244. Van Skiver apparently assumes that all judicial mistakes are "legal" mistakes. Finally, in Adams Millis, the Tenth Circuit cited approvingly the Second Circuit's decision in *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978), which holds that "judicial mistakes" cannot be remedied by a Rule 60(b)(1) motion filed after the time for appeal has lapsed. *Id.,* 758 F.2d at 1358. Based on these authorities, the Court finds that claims of judicial mistake (both of law and of fact) cannot be raised in a Rule 60(b)(1) motion

unless such motion is filed by the deadline for filing a notice of appeal.

The Court's reading of Tenth Circuit law is consistent with the majority of circuits which have addressed the issue. See *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 461 (8th Cir.2000) (Rule 60(b)(1) motion alleging "judicial inadvertence" must be made within period allowed for appeal); *Pierce v. United Mine Workers of Am. Welfare & Retirement Fund for 1950 and 1974,* 770 F.2d 449, 451 (6th Cir.1985) (Rule 60(b)(1) motion based on "legal error" must be brought within normal time for taking appeal), cert. denied, 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986); *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977) (Rule 60(b)(1) motion based on "judicial mistake" must be brought within time for taking appeal); *Gila River Ranch, Inc. v. United States,* 368 F.2d 354, 357 (9th Cir.1966) ("judicial errors" can be corrected under Rule 60(b)(1) within the time for appeal); see also 12 Moore's Federal Practice § 60.41[4][a] at 60–100 (Matthew Bender 3d ed.) (arguing that district court should be able to correct its own "legal errors" if Rule 60(b)(1) motion is brought expeditiously); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 2858 at 299 300 (1995) (relief after appeal time has passed ordinarily granted only if judicial error is "minor oversight, of the type that is hardly more than a clerical error").[3]

An error so fundamental as that argued by Xerox, i.e. the Court assumed that the parties had settled the case when they had done so only "in principle," seems to fall within the category of an erroneous "substantive ruling," not a minor oversight. Indeed, Xerox characterizes the mistake as a "substantive

---

3. Although some exceptions have been carved out in unusual circumstances, the First, Third, Fourth and Seventh Circuits have held that regardless of timing, Rule 60(b)(1) motions ordinarily cannot be used to obtain relief from "legal errors." See Moore's Federal Practice 3d § 60.41[4][b].

The Fifth and Eleventh Circuits recognize that the time for filing a notice of appeal is a relevant interval in determining the timeliness of a Rule 60(b) motion alleging a judicial mistake, but it is not a per se limitation. See

*Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 930–32 (5th Cir.1976); *Parks v. U.S. Life & Credit Corp.,* 677 F.2d 838, 840 (11th Cir. 1982). In *Lairsey* and *Parks,* "the trial court had not necessarily made a legal error; rather there had been a post-decisional change in the law after the time for appeal had expired." *Adams–Millis,* 758 F.2d at 1359. Both cases recognize that ordinarily relief is unavailable if a timely appeal from the original judgment has not been filed. See *Lairsey,* 542 F.2d at 930–32; *Parks,* 677 F.2d at 840–41.

mistake of fact." Xerox's Memorandum In Support Of Its Motion For Relief From Judgment Or Order at 18 ("Xerox's Memorandum In Support"), attached to Xerox's Motion For Relief From Judgment Or Order (Doc. # 36) filed June 15, 2001. Based on Cashner, Xerox was required to raise this claim before the deadline for filing a notice of appeal. See id., 98 F.3d at 578.[4]

■ Xerox maintains that the time for appeal has not yet begun to run because the clerk has not "entered" judgment on the docket as required by Rule 79, Fed.R.Civ.P. To ascertain whether judgment was properly entered on the docket, the Court must first determine whether the administrative closing order satisfies the "separate document" requirement of Rule 58, Fed.R.Civ.P. "Generally, orders containing neither a discussion of the court's reasoning nor any dispositive legal analysis can act as final judgments if they are intended as the court's final directive and are properly entered on the docket." *Clough v. Rush*, 959 F.2d 182, 185 (10th Cir.1992). Here, the administrative closing order gave the parties until April 16, 2001 to reopen the proceedings. Because neither party asked to reopen the case, the order by its own terms "matured into a dismissal ... creating an appealable final judgment." *Lewis*, 850 F.2d at 642–43; see *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir.1994), cert. denied, 514 U.S. 1109, 115 S.Ct. 1960, 131 L.Ed.2d 852 (1995). The Tenth Circuit has held that an administrative closing order, such as the one in this case, "matures into final judgment and, if no action is taken to resolve the case, satisfies the separate document requirement of Rule 58." *Id.*; see *Slade v. United States Postal Serv.*, 952 F.2d 357, 359 n. 1 (10th Cir.1991) (separate document rule does not apply where "there is no question about the finality of the court's decision").

■ Xerox concedes that the administrative closing order satisfies the separate docu-

ment requirement of Rule 58, but argues that the clerk has not yet actually "entered" the judgment on the docket as required by Rule 79(a). See Xerox's Reply In Support Of Its Motion For Relief From Judgment Or Order (Doc. # 38) filed June 28, 2001 at 2. From the Xerox briefs, the Court cannot ascertain precisely the nature of its objection. Entry "occurs only when the essentials of a judgment or order are set forth in a written document separate from the court's opinion and memorandum *and* when the substance of this separate document is reflected in an appropriate notation on the docket sheet assigned to the action in the district court." *Herrera*, 805 F.2d at 899 (quoting *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 688 (4th Cir.1978)) (emphasis in original). "Entry" ordinarily is synonymous with the act of recording by the clerk. See *Herrera*, 805 F.2d at 899 (citing *The Washington*, 16 F.2d 206, 208 (2d Cir.1926))

On March 26, 2001, the clerk entered the following on the docket:

ORDER ENTERED: by Judge Kathryn H. Vratil administratively terminating this action without prejudice; On or before 4/16/01, the parties shall file a stipulation of dismissal; if no such stipulation is received within the specified time and the parties have not reopened for the purpose of obtaining a final determination, this order shall be considered the court's entry of final judgment of dismissal terminating case (cc: all counsel) (ck) [Entry date 03/26/01] [Edit date 03/26/01] [2:94cv2102].

Xerox claims that the clerk never entered final judgment on the "Judgment Docket" pursuant to Rule 79(a). To the extent Xerox argues that Rule 79(a) requires the clerk to maintain a "Judgment Docket" separate from the civil docket, the Court disagrees. Rule 79(a) requires the clerk to enter all papers including orders and judgments filed in an action "on the folio assigned to the action and

---

4. Although the Court characterizes the alleged error as "substantive," it notes that any error was immaterial. Whether counsel informed the Court that the parties had reached a final written agreement, an agreement in principle, a tentative agreement or an agreement to agree, the Court intended to enter an administrative closing order in precisely the same form as it did. No final

written agreement was required for entry of the administrative closing order. See infra note 9. From that standpoint, no mistake occurred. Xerox does not deny that counsel told the Court that the case had been settled in principle, and that statement justified the administrative closing order which the Court entered.

[ ] marked with its file number." Rule 79(b) requires the clerk to maintain a correct copy of any final judgment or appealable order, but the rule does not require the clerk to maintain a "judgment docket" separate from the civil docket specified in Rule 79(a). Moreover, Xerox cannot claim that the clerk's entry of judgment was insufficient. Rule 79(a) requires that "entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court.... " The clerk's notation on the docket sheet conveys the substance of the Court's order and certainly complies with this requirement. The Xerox objection may be that the clerk did not make a separate entry on April 16, 2001 or thereafter to reflect that final judgment had been entered. This type of objection is nothing more than an attempt to rewrite Tenth Circuit law with regard to the separate document requirement of Rule 58. Because the Court's administrative closing order complied with the separate document requirement, see *City of Hobart*, 39 F.3d at 1110, the clerk's entry of the order on the civil docket satisfied the requirement that judgment be "entered" pursuant to Rule 79(a). The clerk does not need to make an additional "entry" where no additional document is required. Rule 79(a) requires the clerk to enter all papers filed, not the happening of contingent events specified in prior orders. Because the administrative closing order became a final judgment of dismissal on April 16, 2001, the deadline to file a notice of appeal was May 16, 2001. See Fed. R.App. P. 4(a). Accordingly, to the extent Xerox asks the Court to vacate the final judgment based on an alleged mistake of fact by the Court, its motion is untimely. See *Cashner*, 98 F.3d at 578.

Although the above analysis disposes of Xerox's claim as to the Court's alleged mistake of fact, it does not address the timeliness of the claim that counsel acted without authority when he informed the Court that the case had been settled. The Court therefore analyzes whether Xerox has timely brought this claim.[5] Under Rule 60(b), a motion for relief from judgment "shall be made within a reasonable time," and for grounds stated in Rule 60(b)(1), "not more than one year after the judgment, order or proceeding was entered or taken." Under the rule, a "motion is not timely merely because it has been filed within one year of the judgment." *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir.1990). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir.1986) (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir.1981)); see *United States v. All Monies From Account No. PO-204,675.0*, 162 F.3d 1174, 1998 WL 769811, at *5 (10th Cir. Oct.29, 1998); *Security Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067–68 (10th Cir.1980). In an abundance of caution, the Court analyzes these factors with regard to both the alleged mistake of fact by the Court and the alleged mistake by counsel in acting without authority in informing the Court that the case had been settled.[6]

5. In briefing the timeliness issue, neither party has distinguished the two alleged mistakes. As discussed below, the temporal relationship between the deadline for a notice of appeal and the filing of a Rule 60(b) motion is a relevant factor, but it is not dispositive for purposes of Xerox's claim that its counsel acted without authority. Although CSU has not identified the appropriate test or all of the appropriate factors to determine whether Xerox's alternative claim is timely, CSU has sufficiently raised the timeliness issue for the Court to consider it. The Court may consider arguments raised by a party even if the party does not cite every factor or set forth the best supporting facts in the record. Because the parties have addressed the facts relevant to the appropriate timeliness factors in their discussion of the merits of the motion, the Court will resolve the issue on the present record. Further briefing on the timeliness issue would not materially assist the Court.

6. Xerox's argument that counsel did not have authority also lacks substantive merit. Xerox apparently assumes that the Court entered the administrative closing order because counsel informed the Court that the parties had reached a "final" settlement and/or that Xerox sought voluntary dismissal of its claims. As explained below, the Court entered the order because counsel informed the Court's staff that a status conference was not necessary due to the parties' agreement in principle to settle all remaining claims. See infra note 9. Xerox does not allege that

### 1. Interest In Finality

As explained above, the deadline to appeal the final judgment of dismissal was May 16, 2001. Because the time for appeal has expired, the interest in finality must be given great weight. See *Ashford*, 657 F.2d at 1055; see also *Matton Steamboat Co. v. Murphy*, 319 U.S. 412, 415, 63 S.Ct. 1126, 87 L.Ed. 1483 (1943) (purpose of statutes limiting period for appeal is to set definite point of time when litigation shall end).

### 2. Reason For Delay

The reason for Xerox's delay in filing its Rule 60(b) motion can best be described as a negligent failure of eight attorneys of record, including in-house counsel, to communicate. See Xerox's Memorandum In Support at 2, 24. According to Xerox, two of eight attorneys of record did not receive a copy of the administrative closing order. It concedes, however, that at a minimum its in-house counsel and local counsel received copies of the order. In the context of determining whether attorney error constitutes excusable neglect, the Supreme Court has noted that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); see *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 469–70 (5th Cir. 1998) (failure to follow plain terms of federal rules does not constitute excusable neglect); *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 999 (11th Cir.1997) (same). Likewise, counsel's failure to read and follow the plain terms of a court order does not justify a two month delay in responding to the order. Both the alleged mistake of fact by the Court and the alleged mistake by

counsel acting without authority were readily apparent to Xerox from a cursory review of the administrative closing order.

In *N. Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164 (7th Cir.1988), defendant was properly served and received notice of a lawsuit "but because of a filing or clerical error failed to notify its outside counsel who was handling" a related matter. Twenty-three days later, the district court entered default judgment. Twenty-one days after a copy of the default judgment was sent to defendant's registered agent, it filed a motion for relief under Rule 60(b)(1). The district court denied relief, noting that the error was careless and within defendant's meaningful control. See *id.* at 167. The Seventh Circuit affirmed. It noted that although "Rule 60(b) gave the district court more than enough latitude to give the appellants another chance," the district court did not abuse its discretion in denying defendant's motion. *Id.* at 168. The instant action does not involve a default judgment or the merits of a Rule 60(b)(1) motion, but the same principles apply. The delay in filing Xerox's Rule 60(b) motion is not justified by a careless assumption, on the part of local counsel and particularly in-house counsel, that lead counsel would handle a matter of such importance.

### 3. Practical Ability Of Litigant To Learn Earlier Of The Grounds Relied Upon

Xerox obviously had an early opportunity to learn of the alleged "mistake of fact" evidenced by the administrative closing order. Of the eight Xerox attorneys who are listed on the court docket sheet, Xerox only claims that two attorneys at one law firm did not receive a copy of the order. The other

counsel lacked authority to inform the Court that the parties had reached a settlement in principle, which is precisely what CSU counsel told the Court's staff. See Declaration of P. John Owen ¶ 3, attached as Exhibit C to CSU's Memorandum In Opposition To Xerox's Motion For Relief From Judgment Or Order (Doc. # 37) filed June 22, 2001. Such a statement by Xerox counsel would have been entirely consistent with the letter sent the very next day to CSU counsel, which was copied to Mr. Marshall, in-house counsel for Xerox. See Letter From Counsel For Xerox To Counsel For CSU Dated March 14,

2001, attached as Exhibit 6 to CSU's Memorandum In Opposition To Xerox's Motion For Relief From Judgment Or Order (Doc. # 37) (noting that subject to caveat that settlement is contingent upon final written agreement, "I think we are in essential agreement regarding the terms outlined in your letter;" noting a "few comments for [CSU counsel] to consider in drafting" a final agreement; noting at end of letter that except for these specific comments, "the terms outline[d] in your letter will be acceptable"). Xerox does not contend that this letter was written without authority.

six attorneys apparently believed, as the Court believed, that the factual basis for the administrative closing order was correct, i.e. that the case had been settled. At a minimum, in-house counsel for Xerox knew the status of ongoing settlement negotiations and easily could have discovered the alleged "mistake of fact" by the most superficial review of the order which he admittedly received on April 2, 2001. Moreover, on March 13, 2001, the Court's staff told a partner at Arnold & Porter (home of the two attorneys who allegedly failed to receive notice of the administrative closing order) that when a case was settled "in principle" but closing documents had not been executed, the Court's practice was to issue an order which gave the parties time to finalize the settlement but required them to report back to the judge within two or three weeks. Staff also informed the partner at Arnold & Porter that such an order would likely be issued.[7] The attorney therefore had notice that an order was forthcoming, but did not inquire of co-counsel or the Court when no such order arrived.

Moreover, Xerox could have easily discovered the alleged fact that its counsel acted without authority in telling the Court that the case had been settled. Peter Marshall, in-house counsel, has submitted a declaration which states that if lead counsel told the Court's staff that the case had been settled, "it would have been without the authorization of Xerox." Declaration of Peter Marshall, ¶ 4, attached as Exhibit 2 to Xerox's Motion For Relief From Judgment Or Order (Doc. # 36). As noted above, however, Mr. Marshall personally received a copy of the Court's order which stated that "[c]ounsel for the parties listed above [CSU and Xerox] have orally confirmed they have settled and compromised the claims in this lawsuit." Order (Doc. # 35). Since Mr. Marshall had been counsel of record in this case since 1994 and had participated throughout the course of the litigation including settlement discussions, this order gave Xerox more than ade-

quate notice of the Court's understanding that the case had been settled. See generally *Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 872 (3d Cir.1994) (party with in-house counsel deemed aware of how case is proceeding and of circumstances indicating that dismissal may be imminent; corporation with in-house counsel held to have known what its agents, including its attorneys, knew).

In sum, this factor strongly weighs against Xerox. Xerox had eight attorneys of record (including in-house counsel) for a reason. The Court cannot imagine a complex antitrust and intellectual property case more well staffed than this one. To now insinuate that Xerox did not have the practical ability to learn of the alleged mistakes at an earlier time would discredit the excellent, timely and thorough work of counsel up to this point in the litigation.

### 4. Prejudice To CSU

The above factors weigh so strongly against Xerox that the prejudice factor carries little weight. Indeed, most cases which find that a Rule 60(b) motion is untimely do not note any prejudice to the opposing party. See, e,g., *Kagan,* 795 F.2d at 610–11 (finding motion untimely without addressing prejudice prong); *Ashford,* 657 F.2d at 1055 (same); *Security Mutual,* 621 F.2d at 1067–68 (finding motion untimely even though "no prejudice" to opposing party). To the extent that the prejudice factor applies, however, it also appears to weigh against Xerox. Xerox concedes that it settled the case in principle in March, or that it at least had agreed to agree, but it nevertheless refused to consummate a written agreement or ask the Court for relief from the final judgment until June 15. See Comments Of Xerox Counsel At Telephone Hearing Of June 11, 2001 (settlement in principle; agreement to agree);[8] Letter From Counsel For Xerox To Counsel For CSU Dated March 14, 2001 at 1 (subject to caveat that settlement is contingent upon

---

7. For purposes of this order, the Court assumes that the substance of the conversation between counsel and the Court's staff was as stated by counsel in his declaration and at the telephone hearing on June 11, 2001.

8. At this time, no official transcript of the telephone hearing has been prepared. The Court has relied on its recollection and notes from the telephone conference.

agreement regarding final terms, "we are in essential agreement regarding the terms outlined in your letter"); Xerox's Memorandum In Support at 6 (parties reached "tentative agreement"). Xerox's delay already has put CSU in a precarious financial position. See Comments of CSU's Counsel At Telephone Hearing Of June 11, 2001; Declaration Of Paul T. Lyon ¶ 13, attached as Exhibit B to CSU's Memorandum In Opposition To Xerox's Motion For Relief From Judgment Or Order (Doc. # 37) filed June 22, 2001. In reliance on the settlement in principle, CSU has renegotiated the employment agreement for its president and CEO, lined up additional investor financing and negotiated new financing arrangements with another bank. See id. ¶ 10. In addition, on March 29, April 30 and May 31, 2001, CSU's current lender, Bank of America, entered one month extensions of a $7 million line of credit to CSU. See id. If the Court vacated the final judgment, it could seriously undermine these financing arrangements. Though the nature of the potential prejudice to CSU may not be compelling, it certainly is sufficient for the Court to pause before vacating a final judgment.

Not one of the above factors favors Xerox. Based on these factors, Xerox has not shown that its delay in seeking relief under Rule 60(b) is reasonable. Indeed, the Court can only attribute its delay to gross negligence, an effort to strategically enhance its bargaining position with CSU, or both. See *McCormick v. City of Chicago*, 230 F.3d 319, 328 (7th Cir.2000) (based on agreement in principle, district court dismissed case with leave to reinstate within 60 days; Rule 60(b) motion filed approximately 100 days after deadline to reinstate deemed untimely); *Kagan*, 795 F.2d at 610–11 (four month delay unreasonable); *Security Mutual*, 621 F.2d at 1068

(delay of 115 days unreasonable); *Central Operating Co. v. Utility Workers of Am., AFL–CIO*, 491 F.2d 245, 253 (4th Cir.1974) (four month delay unreasonable); see also *Larsen Co. v. Consolidated Mktg., Inc.*, 148 F.R.D. 664, 666 (N.D.Ga.1993) (counsel's failure to discover mistake in stipulation of dismissal for over 30 days not excusable neglect). The Court also notes that "[t]here is no reason to consider under Rule 60(b) a motion which could have been made under another rule if the litigant had acted in a timely manner." *Jensen v. Klecker*, 702 F.2d 131, 132 (8th Cir.1983). Relief under Rule 60(b) "is not a substitute for other legal remedies, and relief under this rule is to be granted only when exceptional circumstances prevented a party from seeking redress through the usual channels." *Nucor Corp. v. Nebr. Pub. Power Dist.*, 999 F.2d 372, 374 (8th Cir.1993). Here, Xerox had several mechanisms to ask for relief from the Court's order. First, if Xerox truly believed that the Court's order contained a "mistake of fact" or that counsel had acted without authority, it could have filed a motion for reconsideration pursuant to Rule 59(e), Fed.R.Civ.P., within 10 days of the order or filed a notice of appeal within 30 days of April 16, the date the order became a final judgment of dismissal. Moreover, if Xerox thought that the order was correct but that the parties could not have a final signed agreement by April 16, 2001, it could have sought an extension of the deadline to submit a stipulation of dismissal. See *McCormick*, 230 F.3d at 328 (conscientious attorney would have sought reinstatement as soon as he learned that condition of settlement agreement would not be met or at least as soon as he realized that time provided for reinstatement was about to elapse). The Court therefore finds that the Xerox motion is not timely under Rule 60(b).[9]

9. Xerox argues that to deny attorneys' fees and/or patent damages would constitute the imposition of an involuntary dismissal as a sanction for its failure to meet a court-imposed deadline. See Xerox's Memorandum In Support at 3. The administrative closing order, however, was not a sanction; the Court entered it because the parties informed the court staff they had agreed in principle to settle the remaining claims, and asked the Court not to schedule a status conference in this case. The Court relied on the statements of counsel in terminating all case management activity in the case and, in this regard, the Court handled the case exactly as it has handled hundreds of other cases in which the parties have settled on the eve of trial or other impending deadline. Xerox argues repeatedly that counsel did not inform the Court's staff that a "definitive" or "final" settlement agreement had been reached or that "Xerox sought voluntary dismissal of its remaining claims." See id. at 7, 11, 17. Xerox, however, misapprehends the function of an administrative closing order like

In the alternative, Xerox asks the Court to enforce any alleged agreement by the parties. The record is not sufficiently developed for the Court to make this factual determination. In addition, because the administrative closing order does not reflect the Court's intent to retain jurisdiction and does not incorporate the settlement agreement, the Court may not have jurisdiction to decide the issue. See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *City of Hobart*, 39 F.3d at 1110–11. Therefore, on or before **July 20, 2001,** Xerox shall show cause why the Court should not overrule for lack of jurisdiction its alternative request to enforce the settlement agreement.[10] On or before **July 27, 2001,** CSU may file a response.

As an additional alternative argument, Xerox contends that if the Court's administrative closing order constitutes a final judgment of dismissal, it would not bar Xerox from seeking attorneys' fees on its copyright infringement claims. Contrary to CSU's assertion, it is not readily apparent that the administrative closing order forecloses Xerox's claim for statutory attorneys' fees, see Fed.R.Civ.P. 58 (judgment may be entered before resolution of claim for attorneys' fees), particularly those fees which the Court previously found were appropriate. See 23 F.Supp.2d at 1254 (award of attorneys' fees appropriate to make Xerox whole and to further purposes of Copyright Act). Although a valid settlement agreement could preclude Xerox from recovering such fees, see *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1200 (10th Cir.1998) (under analogous fee provision in civil rights statute, district court has discretion to refuse to award fees

where settlement is conditioned upon waiver of fees) (citing *Evans v. Jeff D.*, 475 U.S. 717, 720, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986)), that issue is not presently before the Court. In addition, the record is not sufficiently developed for the Court to make this factual determination. At this point, Xerox simply asks the Court to set a schedule for Xerox to move for payment of its attorneys' fees as contemplated by the Court's Order dated January 8, 1999. CSU does not specifically object to the scheduling request. Based on CSU's financial situation as outlined above, however, the Court finds that an expedited briefing schedule is appropriate. Xerox shall comply with D. Kan. Rule 54.2 except that the Court shortens the consultation period from 30 days to 10 days. On or before **July 23, 2001,** Xerox shall serve and file its motion requesting attorneys' fees on its copyright infringement claims, along with its statement of consultation. On or before **July 30, 2001,** CSU shall serve and file an opposition brief, a list of witness it may call at a hearing on the attorneys' fee issue and a brief summary of their expected testimony, and a list of exhibits it intends to introduce at a hearing. On or before **August 3, 2001,** Xerox shall serve and file a reply, a list of witness it may call at a hearing on the attorneys' fee issue and a brief summary of their expected testimony, and a list of exhibits it intends to introduce at a hearing. Although the Court has set a briefing schedule on the issue, it does not decide at this time whether an award of attorneys' fees would be appropriate in light of the parties' purported settlement and the administrative closing order. CSU may raise any such objections in its opposition brief. The Court's deputy clerk

the one entered in this case. An administrative closing order is not necessarily entered to confirm a "final, written settlement agreement" or at a party's specific request for "voluntary dismissal of its claims." Indeed, in cases where a final settlement has been executed or a party specifically requests a voluntary dismissal of claims, an administrative closing order would rarely be appropriate; the parties could proceed to a consent judgment or dismissal with no need for interim orders. In virtually all cases, the function of an administrative closing order is to allow the parties a reasonable opportunity to finalize a settlement while simultaneously relieving them of other impending obligations in the litigation. It also requires them to proceed expe-

ditiously to a final closure of the case. The procedure prevents intentional manipulation of important case management deadlines (including trial), while giving the parties an opportunity to re-open the case or extend the time for consummating the settlement, if necessary.

10. The Court recognizes that to the extent the purported settlement relates to the amount of attorneys' fees on Xerox's copyright infringement claim, see infra, the Court may need to determine whether the agreement is enforceable. Xerox need not address this particular issue in its show cause response.

will contact counsel to schedule a hearing on Xerox's motion for attorneys' fees.

**IT IS THEREFORE ORDERED** that Xerox's Motion For Relief From Judgment Or Order (Doc. # 36) filed June 15, 2001 be and hereby is **OVERRULED in part** and **DEFERRED in part.** The Court defers consideration of Xerox's request to enforce the alleged settlement agreement. Xerox's motion is otherwise overruled.

**IT IS FURTHER ORDERED** that on or before **July 20, 2001,** Xerox show cause in writing why the Court should not overrule for lack of jurisdiction its alternative request to enforce the settlement agreement. On or before **July 27, 2001,** CSU may file a response.

**IT IS FURTHER ORDERED** that on or before **July 23, 2001,** Xerox shall serve and file its motion requesting attorneys' fees on its copyright infringement claims, along with its statement of consultation. On or before **July 30, 2001,** CSU shall serve and file an opposition brief, a list of witness it may call at a hearing on the attorneys' fee issue and a brief summary of their expected testimony, and a list of exhibits it intends to introduce at a hearing. On or before **August 3, 2001,** Xerox shall serve and file a reply, a list of witness it may call at a hearing on the attorneys' fee issue and a brief summary of their expected testimony, and a list of exhibits it intends to introduce at a hearing.

**IT IS FURTHER ORDERED** that counsel shall serve all briefs specified in this order by fax and overnight delivery. Because of the expediting briefing schedules set forth above, the Clerk is directed to mail and fax a copy of this Memorandum and Order to all counsel of record.