**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TRANS SHUTTLE, INC., a Colorado
corporation; JEJAW GOSHU,
individually and doing business as
Hallelujah Shuttle; GEBERMICHAEL
YESHIGETA, individually and doing
business as Ethio Shuttle,

        Plaintiffs - Appellants,

and

GETACHEW M. KASSA, individually
and doing business as Galaxy Shuttle,

        Plaintiff,

v.

THE PUBLIC UTILITIES
COMMISSION OF THE STATE OF
COLORADO; CITY AND COUNTY
OF DENVER, by and through BRUCE
BAUMGARTNER as Manager of
Aviation; DENVER SHUTTLE,
L.L.C., a Colorado Limited Liability
Company; SHUTTLE ASSOCIATES,
LLC, a Colorado Limited Liability
Company,

        Defendants-Appellees.

No. 01-1025
(D.C. No. 00-K-1458)
(D. Colo.)

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **PORFILIO** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. FACTS

Appellant businesses and their officers (the shuttle operators) operate separate and independent airport shuttle services, offering ground transportation to and from Denver International Airport (DIA). They do so without a permit from the Colorado Public Utilities Commission (PUC), which regulates *intrastate* commercial motor carriers within the state. Each shuttle operator instead holds a certificate from the Federal Highway Administration, an arm of the United States Department of Transportation, authorizing it to transport passengers along certain *interstate* routes (e.g., between Cheyenne, Wyoming, and DIA, and between

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Santa Fe, New Mexico, and DIA). Each certificate allows a shuttle operator to conduct limited intrastate shuttle services, but "*only* if the carrier also provides substantial regularly scheduled interstate passenger transportation service on the same route." *See, e.g.,* Aplt's App. at 30, "Department of Transportation Office of Motor Carrier Safety Certificate" of Plaintiff Trans Shuttle, Inc. (emphasis added).

PUC issued a series of penalty notices against the shuttle operators, contending they were conducting extensive intrastate operations without providing the necessary interstate service. PUC administrative law judges presided over a number of penalty proceedings against the shuttle operators, each time finding that a violation occurred, each time assessing a civil penalty. PUC has fined the shuttle operators a total of approximately $8,000 and continues to pursue new penalty assessments during the pendency of this appeal. Aplt's Motion for Writ of Prohibition or Mandamus at pp. 4-5. Furthermore, PUC notified DIA officials about the shuttle operators' violations, prompting the airport to begin the process of revoking their access to Level 5 at the terminal, which is reserved for commercial motor carriers.

For the most part, the shuttle operators did not challenge the evidence presented by PUC investigators and lawyers at the various administrative hearings. Instead they insisted that PUC has no regulatory authority over any of

-3-

their operations, including their intrastate operations, because their federal permits preempt such state authority. The shuttle operators claimed that only the Federal Highway Administration can penalize them for violating the terms of their federal permits.[1]

Having had no success in the PUC administrative proceedings, the shuttle operators exercised their statutory right to seek review of the agency's actions in the state district court. *See* Exhibit E, "Complaint Under Rule 106 C.R.C.P," and unidentified exhibit entitled "Combined Application for Writ of Certiorari or Review Under C.R.S. § 40-6-115(1) and Complaint Under Rule 106 C.R.C.P," both attached to Aplt's Br. While this review was pending in state court, the shuttle operators filed suit under 42 U.S.C. § 1983 in federal district court against PUC and DIA, seeking an injunction to bar PUC's regulatory authority over their operations and to enjoin further access revocation proceedings by DIA.[2] In addition to asserting their federal preemption claim, they alleged that PUC and DIA targeted them because their officers and principals are ethnic minorities. The shuttle operators sought to enjoin what they claim is a racially

---

[1]  In addition to the Supremacy Clause, U.S. Const. art. 6, § 2, the shuttle operators rest their preemption claim on two sources: 1) the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3; and 2) 49 U.S.C. § 14501(a), which addresses the scope of state authority to regulate certain motor carriers traveling on interstate routes.

[2]  The state court review of PUC's penalty assessments is still pending.

-4-

motivated deprivation of their constitutional right to engage in interstate commerce.

Still seeking only injunctive and declaratory relief, the shuttle operators also named Denver Shuttle L.L.C. as a defendant in this federal suit. Denver Shuttle, also known as Super Shuttle, operates an airport shuttle service under a valid PUC permit. The shuttle operators alleged that defendant Super Shuttle illegally interfered with their businesses, a contention that rests in part on an earlier lawsuit filed by Super Shuttle against one of the shuttle operators, Hallelujah Shuttle. Acting as a private attorney general, Super Shuttle sued Hallelujah Shuttle in state district court, alleging that Hallelujah was operating a commercial shuttle service without a valid permit from PUC.

The shuttle operators sought a temporary restraining order in connection with their federal lawsuit. The district court denied the request, finding it unlikely that they would prevail on the merits. PUC then filed a motion, joined by DIA, to dismiss the amended complaint, raising both Eleventh Amendment immunity and *Younger* abstention. *See Younger v. Harris*, 401 U.S. 37 (1971) and *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (defining federal abstention pending resolution of state criminal, civil, or administrative proceedings). The district court granted the motion on abstention

grounds. Because it declined to exercise jurisdiction, the district court dismissed the case with respect to all defendants. The shuttle operators appeal. We affirm.

## II. JURISDICTION

Under circuit precedent, PUC's claim of Eleventh Amendment immunity challenged the subject matter jurisdiction of the district court. *Thompson v. Colorado*, 258 F.3d 1241, 1245 (10th Cir. 2001). Generally, a court must resolve concerns regarding its jurisdiction before it may address the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) (rejecting the doctrine of hypothetical jurisdiction).

Although the district court decided the abstention question without addressing PUC's immunity claim, it did not run afoul of the rule announced in *Steel Co.*, which specifically indicated that a court can dismiss under the *Younger* doctrine without resolving doubts about its subject matter jurisdiction. *Id.* at 100 n.3 (approving dismissal under *Younger* without first determining whether there is a case or controversy). The Court later verified the propriety of abstention under *Younger* "without deciding whether the parties present a case or controversy." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (citation omitted).

Because we resolve that the district court properly invoked the *Younger* doctrine to dismiss the amended complaint, this court need not address PUC's assertion of Eleventh Amendment immunity.

## III. YOUNGER ABSTENTION

The district court's abstention under *Younger* is subject to de novo review. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). Under *Younger* and its progeny, "federal courts should not interfere with state court proceedings by granting equitable relief–such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings–when a state forum provides an adequate avenue for relief." *Joseph A. ex rel Wolfe v. Ingram*, __ F.3 __, No. 00-2136, 2001 WL 951352, at *9 (10th Cir. Aug. 22, 2001) (quotation omitted). One of the fundamental policies underlying the *Younger* doctrine is the recognition that state courts are fully competent to decide federal constitutional questions. *Middlesex County Ethics Comm.*, 457 U.S. at 431.

*Younger* requires a federal court to abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests or policies. *Amanatullah*, 187 F.3d at 1163. "*Younger* abstention is

-7-

non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Id.* All of the elements of *Younger* are present here.

A.    Ongoing State Proceedings

The shuttle operators do not contest the first element, conceding the existence of ongoing state civil and administrative proceedings.

B.    Adequacy of State Forum

The shuttle operators contend that the state forum is inadequate and offer three arguments.

*1.    Ability to Raise Preemption Claim*

Initially, the shuttle operators claim that the state proceedings are limited in scope and therefore do not offer a suitable forum in which to raise their federal constitutional claims.

The Supreme Court has stated that *Younger* principles apply when there are extant state administrative proceedings "in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986). Crucial to what the Court would regard as such a full and fair opportunity is the presence of state court review: "[I]t is sufficient [for purposes of invoking

*Younger* ] that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Id.* at 629.

Here the shuttle operators raised, and a state ALJ addressed, the federal preemption claim in each of the administrative hearings before the PUC. *See* Recommended Decision(s) Assessing Civil Penalty; Aplt's App. at 102-10; 121-30; 151-56. Moreover, Colorado law specifically allows this and other constitutional claims, including the shuttle operators' civil rights claims, to be asserted and reviewed in the state district court. Colo. Rev. Stat. § 40-6-115(2). Indeed, with respect to "any proceeding wherein the validity of any order or decision is challenged on the ground that it violates . . . the constitution of the United States," the state court is required to "exercise an independent judgment on the law and the facts." *Id*. Colorado law further provides for appellate review of the state district court's decision by the Colorado Supreme Court. *Id.* at § 40-6-115(5).

We conclude that Colorado provides suitable fora by which the shuttle operators may obtain a remedy for their alleged constitutional violation. The shuttle operators not only were able to litigate their preemption claim before the PUC, they are entitled to and have sought an independent state court review of the agency's decision. *Younger* requires nothing more. *See, e.g., Middlesex County Ethics Comm.*, 457 U.S. at 435-37 (holding that federal courts should not

interfere with pending attorney disciplinary actions if state procedures allow an attorney the opportunity to raise constitutional challenges to the proceedings); Erwin Chemerinsky, *Federal Jurisdiction*, § 13.4 at 810-11 (3d ed. 1999) ( "Thus, state proceedings will be deemed inadequate if either impermissible bias is shown or if there is no available state remedy. Such findings, however, are likely to be very rare.").[3]

### 2. *Availability of Relief Against All Parties*

The shuttle operators next assert that the state forum is inadequate because it does not involve DIA or Super Shuttle, both of which are named as defendants in the federal lawsuit.[4] They refer only to their consolidated state court review of

---

[3] The shuttle operators do not allege bias on the part of the state courts. However, invoking a recognized exception to *Younger*, they do allege bad faith by PUC and the other defendants, insofar as the "concerted activities of the Defendants were done in such a way as to constitute harassment or abuse of authority . . . ." Aplt's Br. at 16. Before this court can consider a claimed bad faith exception to *Younger*, the shuttle operators must "set[]forth more than mere allegations of bad faith or harassment." *Amanatullah*, 187 F.3d at 1165 (quotation omitted). The shuttle operators have not met this burden.

[4] The shuttle operators filed a motion in the district court seeking to amend their complaint (a second time) to add individual PUC commissioners as defendants. The district court denied that request when it granted PUC's motion to dismiss on *Younger* grounds. In a single sentence unsupported by authority or argument, buried in their opening brief, the shuttle firms "note" that "the Trial Court should have granted Plaintiffs' Motion to Amend to name the individual commissioners of the PUC as parties Defendant [sic]." Aplt's Br. at 17-18. The shuttle operators' cursory reference to the district court's failure to permit amendment is insufficient to preserve the issue for appellate review. *See United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) (appellant must present

(continued...)

PUC's penalty assessments, however. They overlook separate, though intimately related, state court or administrative proceedings that do indeed involve DIA and Super Shuttle.

DIA is obviously a party to the very administrative proceedings it commenced against the shuttle operators to revoke their access to that portion of the airport terminal reserved for commercial carriers. DIA initiated those proceedings when it received notice from PUC that the shuttle operators were violating state law by providing transportation services without a valid state permit. Furthermore, Super Shuttle is obviously a party in the state court action it brought against Hallelujah Shuttle, one of the plaintiff shuttle operators, alleging that Hallelujah Shuttle was similarly violating state law by operating without a valid PUC permit. Acknowledging an even more pervasive presence of Super Shuttle, the shuttle operators alleged in their federal court amended complaint that "there is a substantial likelihood" that Super Shuttle will bring similar actions in state court against the remaining shuttle operators. Aplt's App. at 19, Amended Complaint, para. 48.

DIA officials have agreed to postpone the threatened revocation hearings until the legal issues surrounding the PUC penalty assessments are resolved. The

[4](...continued)
reasoned arguments addressing grounds for appeal).

shuttle operators continue to enjoy access to Level 5 during the pendency of the administrative proceedings. Answer Brief of City of Denver at p. 3. If and when those proceedings resume, the shuttle operators do not suggest that they will be unable to press their underlying preemption claim before the administrative hearing officer. In the event DIA does in fact revoke their access to Level 5, the shuttle firms may seek judicial review and raise their constitutional claim of preemption under Colo. R. Civ. P. 106(a)(4), which allows for a state district court to grant relief when any governmental body "exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion." The Colorado Supreme Court, moreover, has held that an aggrieved party may bring a constitutional challenge against the relevant governmental body in any proceeding under Colo. R. Civ. P. 106(a)(4). *Tri-State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670, 676 n.7 (Colo. 1982). Likewise, the shuttle operators do not deny that they can raise their constitutional claim in any current or future state court action brought by Super Shuttle.

The shuttle operators are thus free to litigate their preemption challenge in the state proceedings against both DIA and Super Shuttle. As a result, we conclude that the pending state court review of PUC's penalty assessments, in conjunction with the related proceedings involving DIA and Super Shuttle,

embrace and encompass all parties to and all issues in the shuttle operators' federal lawsuit.

### 3. *Jurisdiction of State Court*

Finally, the shuttle operators attack the adequacy of the state court fora by insisting that the state court lacks jurisdiction "to determine the Plaintiffs' compliance with federal law and their Federal licenses." Aplt's Br. at 12. This argument differs not at all from those addressed above, i.e., the shuttle operators' contention that the state fora are inadequate to address defenses based on federal constitutional principles. It is clear that the state courts have jurisdiction to resolve the shuttle operators' constitutional defenses. Indeed, as we stated above, Colorado law specifically authorizes the state district courts to address federal constitutional claims, and the *Younger* doctrine is founded on the principle that state courts are no less capable of interpreting the federal constitution than are federal courts.

## C. Importance of State Interests

The third *Younger* factor, the importance of the relevant state interests, is prevalent. PUC is charged with regulating intrastate motor carriers; its purpose is to protect the health and safety of its citizens who ride with these carriers and who share the roads with them. *See* Colo. Rev. Stat. § 40-10-102 (charging PUC to regulate motor carriers and declaring them "to be affected with a public

-13-

interest"). The PUC charge involves an important state interest. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 620 (1989) (holding that Fourth Amendment rights were outweighed by compelling government interest in protecting safety of railway passengers).

The shuttle operators deny the importance of this asserted interest by focusing on the merits of their preemption claim. They accept PUC's regulatory authority over intrastate carriers, but claim PUC can have no valid interest in regulating federal permittees. This argument does no more than restate the central controversy. It is not so much an argument against the importance of the state's interests as it is a conclusion drawn from an earlier assumption that the shuttle firms are exempt from state regulation, an assumption that is under attack from PUC and is currently being litigated in state court. It is, in any event, a hollow response to what is a valid and important state interest.

## IV. DISMISSAL OF DIA AND SUPER SHUTTLE

The shuttle firms contend that even if the district court properly invoked *Younger* abstention with respect to PUC, it was error to dismiss the entire lawsuit. The shuttle firms urge this court to reinstate their claims against DIA and Super Shuttle. We decline.

As discussed above, all three co-defendants named in the shuttle firms' federal suit have initiated some state court or state administrative action against

-14-

one or all of the firms. In all three fora, the parties present the same legal issue, the extent of PUC's ability to regulate a federally permitted motor carrier. All three cases involve the same general public policy, protecting the health and safety of passengers and highway travelers. The three *Younger* factors, ongoing state proceedings, adequate forum to raise constitutional claim, and an important state interest, are extant. Moreover, if abstention is required with respect to PUC, as we have ruled, abstention is equally required with respect to DIA and Super Shuttle.

The judgment of the United States District Court for the District of Colorado is AFFIRMED. The shuttle operators' motion for writ of prohibition or mandamus is DENIED as moot. [5]

Entered for the Court

Michael R. Murphy
Circuit Judge

---

[5] We also DENY the joint motion to intervene filed by Colorado Express, Mo's Express, and Mozammel H. Tipu individually and doing business as Angel's Transportation. The motion is both untimely and unwarranted. *See* Fed. R. App. P. 15(d) (requiring that motion to intervene "must be filed within 30 days after" the appeal is filed) and *Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir.) (stating that intervention at appellate stage is permissible in an "exceptional" case and for "imperative reasons"), *cert. denied*, 531 U.S. 959 (2000). Additionally, the proposed interveners' motions to strike responses filed by DIA are DENIED as moot.