EAST WEST RESORT TRANSPORTATION, LLC, doing business as Colorado Mountain Express and/or CME Premier and/or Premier VIP Transportation and/or Resort Express a/k/a Colorado Mountain Express, LLC, Plaintiff,

v.

Gregory E. SOPKIN, Polly Page, and Jim Dyer, in their official capacities of the Public Utilities Commission of the State of Colorado; and

The Public Utilities Commission of The State of Colorado, Defendants.

No. CIV. 04CV00105LTBMJW.

United States District Court, D. Colorado.

June 3, 2005.

Thomas J. Burke, Jr., Jones & Keller, P.C.; Denver, CO, for Plaintiff.

David Alexander Beckett, Attorney General's Office Department of Law, John Jay

Roberts, Krug & Sobel, L.L.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

### I. Background

Defendant, the Public Utilities Commission of the State of Colorado, is an agency of the State of Colorado, established by the Colorado Legislature pursuant to C.R.S. § 40–2–101. The Commission has exclusive authority to regulate public utilities, including motor-vehicle common carriers of passengers, pursuant to article XXV of the Colorado Constitution. Defendants Gregory E. Sopkin, Polly Page, and Jim Dyer are duly appointed and lawfully serving Commissioners of the Commission. I will refer to Defendants together, unless explicitly stated otherwise, as "the Commission".

Plaintiff East West Transportation, LLC, which does business as Colorado Mountain Express ("CME"), is a motor-vehicle common carrier of passengers, and is licensed to provide passenger transportation in both interstate and intrastate commerce. Its operations are conducted solely within the State of Colorado. It conducts operations between DIA and other airports and various mountain ski resorts in Pitkin, Eagle, and Summit Counties.

CME holds federal, interstate franchises as certificates of public convenience and necessity. They were issued by the Interstate Commerce Commission ("ICC") or ICC's successor, the Surface Transportation Board ("STB"). CME holds some of those certificates by acquisition of other certified motor-carrier properties.

CME also holds authority from the Commission to operate intrastate routes. This authorization, it is not disputed, substantially duplicates the rights conferred in the federal authorizations.

On October 1, 2003, the Commission issued Civil Penalty Notice ("CPAN") No. 28339 to CME. CPAN No. 28339 alleged sixteen violations, eight occurring on September 29, 2003 and the other eight occurring on September 30, 2003. All sixteen violations alleged in the CPAN implicate C.R.S. § 40–10–117, which prohibits motor-vehicle carriers from carrying or advertising to carry persons at rates different from those on file with Commission. Through the CPAN, the Commission seeks to impose only a monetary penalty on CME totaling $6,400.

On November 20, 2003, after the issuance of the CPAN, CME filed a revised tariff, Colorado PUC No. 2, with the Commission to adjust, *inter alia,* CME's on-file intrastate scheduled transportation rates. The rates as filed in the PUC No. 2 reconcile the discrepancy between filed and advertised intrastate rates that existed on September 29 and 30, 2003. PUC No. 2 became operative by law on January 2, 2004.

However, CME did not pay the $6,400 penalty sought in the CPAN. Therefore, the Commission initiated an administrative action against CME, docket no. 03G–472CP, to adjudicate the allegations and set the matter for an administrative hearing. The Commission set a hearing date and established procedural deadlines on January 5, 2004. Commission administrative-action docket no. 03G–472CP is presently stayed while the instant action continues.

On January 20, 2004, CME filed its Complaint for Declaratory Judgment and Related Injunctive Relief in this action. CME seeks: 1) declaratory judgment that CPUC stands in defiance of federal law and seeks to interfere with CME's federally recognized rights to engaged in interstate commerce under 49 U.S.C. 13902 *et seq.* ("The Bus Act") (Count 1); 2) declar-

atory judgment that its civil rights under 42 U.S.C. § 1983 have been violated by CPUC's subjecting it to regulatory power that CME alleges has been preempted by Congress (Count 2); and 3) injunctive relief to permanently prevent the Commission from exercising jurisdiction over CME's scheduled operations (both claims).

Essentially, CME contends that if I were to find that it is providing actual and substantial interstate transportation over its authorized routes within Colorado, CPUC and the Commissioners are foreclosed from regulating CME's fares by the expressly preemptive provisions of the federal Bus Act, 49 U.S.C. § 14501(a).

CME contends that it is engaged in interstate, rather than simply intrastate, transportation because its services essentially extend through passengers traveling to and from Colorado by use of Denver International Airport. Whether this constitutes "interstate transportation" is the key question in this case.

On September 24, 2004, after settlement negotiations failed, CME filed a Petition for Declaratory Order under 5 U.S.C. § 554(e) (Administrative Procedure Act) with the STB. CME contends this invokes the federal agency's jurisdiction under 49 U.S.C. § 721 to declare the legal rights and obligations of motor carriers under the Bus Act and the U.S. Constitution or aid in controversies to which motor carriers are a party.

On March 21, 2005, the STB issued a decision in which it stated that it would institute a proceeding to determine, based on analysis of CME's interstate operations, "whether 49 U.S.C. § 14501(a) preempts CPUC from regulating the rates which CME may assess for scheduled, regular-route, inter-city motor-carrier transportation of passengers in Colorado." It allowed the Commission to intervene, and set April 11, 2005 as the deadline for the Commission's response, and April 21, 2005

as the deadline for CME's reply. This administrative proceeding is presently ongoing.

Meanwhile in this case, the Commission has filed a motion to dismiss for lack of subject-matter jurisdiction. CME has filed a motion to "continue the stay" of this case pending the STB's eventual decision. Hearing was held on these motions on March 4, 2005. I discuss both motions below.

## II. The Commission's Motion to Dismiss

As a threshold matter, I note that the Commission moved to dismiss CME's complaint for a preliminary injunction within their response to CME's motion "to continue stay". Under the local rules of this Court, motions shall not be included in responses or replies to an original motion. *See* D.Colo.LCivR 7.1(c). That being said, in this case I will look past the Commission's failure to follow the local rule as Plaintiffs did not oppose the motion on that ground, and the motion has substantial merit.

### A. *Legal Standard under Rule 12(b)(1)*

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir.1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir.1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442

F.2d 674, 677 (10th Cir.1971). The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir.1995). Second, if a party attacks the factual assertions regarding subject-matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *Id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *Id.* Defendants' motion takes the first form. Therefore, I must accept Plaintiffs' allegations as true.

### B. *Eleventh Amendment*

### 1. The Commission

The Commission opposes Plaintiff's claims on a number of subject-matter jurisdictional grounds. First, it contends that the action is barred by the Eleventh Amendment. Under that Amendment, a state "is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It protects states from suits in law or equity, including injunctions. *See Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

■■■ Under what is known as the "arm-of-the-state" doctrine, Eleventh Amendment immunity extends to entities created by state governments that operate as their alter egos or instrumentalities. *See Mascheroni v. Board of Regents of the Univ. of Cal.,* 28 F.3d 1554, 1559 (10th Cir.1994). I employ the following analysis to determine the nature of the Commission in this regard:

> In determining in a given case whether a board or agency is an arm or alter ego of the state and therefore in reality the state within the meaning of the Eleventh Amendment, the powers, nature, and characteristics of the board or agency must be critically examined under state law. Two primary tests ... are: 1) To what extent does the [entity], although carrying out a state mission, function with *substantial autonomy* from the state government, and 2) to what extent is the agency *financed independently* of the state treasury.

*Unified School Dist. v. Epperson,* 583 F.2d 1118, 1121–22 (10th Cir.1978) (internal citations removed) (emphasis added). *See also, Watson v. University of Utah Medical Ctr.,* 75 F.3d 569, 575 (10th Cir.1996); *Sturdevant v. Paulsen,* 218 F.3d 1160 (10th Cir.2000).

■■■ The Commission was created by Article XXV of the Colorado Constitution and the state legislature. Its members are appointed by the governor with consent of the state senate. C.R.S. § 40–2–101(1) and 24–34–104(6), (39)(b)(XVII). The Commission's authority is broad, but expressly limited by the state legislature through statutory action. *See Peoples Natural Gas Div. of Northern Natural Gas Co. v. Public Utilities Com.,* 626 P.2d 159, 161–62 (Colo.1981). The parties agree that while the Commission is technically funded through the Colorado legislature, it is actually funded by fees paid by regulated companies and motor carriers. The Commission is also a state "agency" under Colorado's administrative procedure act. *See* C.R.S. § 24–4–102(3).

CME contends the agency is autonomous because it "has broadly based authority to do whatever it deems necessary or convenient to accomplish the legislative

functions delegated to it," *Montrose v. Public Utilities Com.*, 629 P.2d 619, 624 (Colo.1981), and because it promulgates its own rules and regulations free from the Colorado Department of Regulatory Agencies' supervision. C.R.S. § 40–2–108. I disagree.

First, the Colorado legislature grants the Commission its authority, and the legislature can change that authority by statute. Also, the reach of the agency's jurisdiction is statewide, not local, and the Commission is a creature of the state constitution. Moreover, its autonomy-however broad-does not separate it from state government; there is no question that those regulated by the Commission are regulated by the state's public-utility regulatory entity. No regulated entity would question whether the state was regulating it, regardless whether the commission is an "arm" or "alter ego" of the state.

CME contends that the Commission's funding, based in fees it collects, tips the balance against immunity. Although close, I disagree. While the Commission receives its funding through collected fees, as to the degree of state funding the question is whether the agency has the power to issue bonds and levy taxes. *See Sturdevant*, 218 F.3d at 1170. The Commission does not. This tips the scales in favor of immunity. I conclude the Commission is an alter ego of the State of Colorado. The Commission has not waived its Eleventh Amendment immunity. Therefore, I grant the motion to dismiss this case against the Commission as an entity.

### 2. The Individual Commissioners

██ CME contends that the individual state commissioner defendants are not immune under the Eleventh Amendment under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), as applied by the Tenth Circuit in *Williams v. Eaton*, 443 F.2d 422, 428 (10th Cir.1971): "It is the settled doctrine of this court that a suit against individuals for the purposes of preventing them as officers of a state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff is not a suit against the state within the meaning of the [Eleventh] amendment." *See also, John Roe # 2 v. Ogden*, 253 F.3d 1225, 1233 (10th Cir.2001).

██ The Tenth Circuit applies a four-part framework to determine whether the *Ex parte Young* doctrine applies:

First, we determine whether the action is against state officials or the state itself. Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law. Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury. Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interests."

*Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 866 (10th Cir.2003). First, the commissioners are state officials and were sued individually as defendants. Second, CME alleges that these officials have attempted to coerce compliance with the Commission's rate assessment requirements, allegedly in violation of preemptive federal law under 49 U.S.C. § 14501. The Commission says that CME allege this violation of federal law "solely for the purpose of obtaining jurisdiction." That is immaterial here, however, because I must accept Plaintiffs' allegations as true in my assessment of this facial attack on jurisdiction.

Third, the relief sought here is "permissible prospective relief" in the form of an injunction and declaratory judgment, not damages. The Commission contends the alleged wrong has no basis in federal law so there is nothing to remedy, and any

relief is not "permissible." Again, this goes beyond the face of the allegations. Finally, no special sovereignty interests are at play. Therefore, I conclude that the Commissioners are not cloaked by Eleventh Amendment protection.

### C. *42 U.S.C. § 1983*

#### 1. The Commission

■ The Commission contends that it is not a "person" under § 1983 so I must dismiss CME's Second Claim for relief. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in [a] . . . suit in equity . . . .

The Supreme Court and the Tenth Circuit have held that a state as an entity in itself is not subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Williams*, 443 F.2d at 429. Because I have determined the Commission to be an arm of the state and, thus, immune from suit under the Eleventh Amendment, I also conclude that § 1983 does not apply to it. *Will*, at 70, 109 S.Ct. 2304.

#### 2. The Commissioners

■ CME contends that, nonetheless, the individual Commissioners are subject to § 1983 liability. I agree. The Supreme Court in *Will* stated: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state." *Id.* at 71

n. 10, 109 S.Ct. 2304. The Commission, in a one-paragraph response to this argument, says only that if the Commissioners are immune under the Eleventh Amendment, they are immune from a § 1983 claim. I have held the Commissioners are not immune under the Eleventh Amendment, and I hold that they are subject to § 1983.

### D. *Younger Abstention*

The Commission contends this matter is a traditional area of purely state concern so this Court should abstain from deciding it. *See Seneca–Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 713 (10th Cir.1989). During the hearing, the Commission said the "silver bullet issue" is that the Commission is a state agency authorized to regulate intrastate carriers, and CME has voluntarily subjected itself to Commission jurisdiction through its state operating certificate. Conversely, CME contends that *Younger* abstention has no role here because the federal legislative basis for CME's requested prospective relief rests on a "bedrock of explicit federal preemption." Moreover, CME has postured its case on the theory that the Commission stands in defiance of federal law and seeks to interfere with CME's federally recognized rights to engaged in interstate commerce under 49 U.S.C. 13902 *et seq.* ("The Bus Act"); and that its civil rights under 42 U.S.C. § 1983 have been violated by CPUC's subjecting it to regulatory power that CME alleges has been preempted by Congress. I conclude that as postured, this is not a traditional subject of "purely state concern".

I asked counsel for the Commission which of CME's certificates of operation, the interstate federal certificate, or the intrastate Colorado certificate, controls. He said that the Commission disputes the level of interstate movement that would

qualify CME as a *bona fide* interstate carrier, so the intrastate certificate controls.

Not surprisingly, CME disagrees, saying the federal certificate controls. That leaves the question who is best authorized to determine the interstate component of CME's operations, a *federal* component, in order to determine which certificate controls. Currently, the STB is determining "whether 49 U.S.C. 14501(a) preempts [the Commission] from regulating the rates which CME may assess for scheduled, regular-route, intercity motor carrier transportation of passengers in Colorado.... CME claims that it is a motor carrier engaged in interstate commerce over its authorized routes, and therefore section 14501(a) preempts [the Commission] from requiring CME to file its rates with the state or charge state-prescribed rates." STB Decision, March 21, 2005, Ex. A to Plaintiff's Notice of Order, March 21, 2005.

■ The Tenth Circuit states the *Younger* Doctrine as follows: "Federal courts should not interfere with state-court proceedings by granting equitable relief-such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-when a state forum provides an adequate avenue for relief.... [A]bstention is the exception, not the rule. It should be rarely ... invoked, because the federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them." *Joseph A. ex rel. Corrine Wolfe v. Ingram,* 275 F.3d 1253 (10th Cir.2002). "A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate

separately articulated state policies. Younger abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances." *Amanatullah v. State Bd. of Med. Exam'rs,* 187 F.3d 1160, 1163 (10th Cir.1999).

■ First, it is undisputed there is an ongoing Commission enforcement proceeding (docket no. 03G–472CP) in which the Commission seeks to adjudicate sixteen violations alleged against CME in the CPAN that implicate C.R.S. § 40–10–117, which prohibits motor-vehicle carriers from carrying or advertising to carry persons at rates different from those on file with CPUC. However, that proceeding is presently stayed.

Second, the Commission contends that it, and in turn, the Colorado courts, are adequate fora within which to hear CME's constitutional civil-rights claims. It argues that it has expertise in federal and state certificate interpretation. The Commission also contends that CME could raise its preemption claim before the Commission and in subsequent state-court review.

I question whether the Commission proceeding, or the state courts, are adequate fora for determining the nature and extent of CME's interstate operations under a complex federal regulatory scheme covered by the federal certificate. The STB-on the other hand-has specific authority and expertise under 5 U.S.C. 554(e) and 49 U.S.C. 721 to issue a declaratory order to terminate a controversy or remove uncertainty, as in this case. As the federal agency that provides and oversees federal certificates of public convenience and necessity like those issued to CME, it is uniquely positioned to interpret the extent of CME's operations between Colorado and other states. It is currently deciding this question. And an eventual ruling by

the agency will inform me in this case. Therefore, I conclude that The Commission-under these circumstances-is not an adequate forum for deciding this federal question, regardless of the implications as they might apply to its ability to regulate CME under state certificates. As to the third prong, there is no doubt that regulation of passenger carriers such as CME is an important state interest.

*Younger* abstention applies when "important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate [its] constitutional claim." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). No one disputes the constitutional underpinnings of CME's claims, which find their genesis in the commerce clause of the United States Constitution. Under Colorado law, a state district court hearing an appeal of a Commission order has jurisdiction to make a determination regarding affirmative defenses claiming lack of jurisdiction resulting from federal preemption. *See* C.R.S. § 40–6–115(2) and (3). Therefore, the Commission says, federal-court intervention is unnecessary. I disagree.

I am not persuaded that CME would have the requisite "full and fair" opportunity to litigate its constitutional claims in the course of a Commission enforcement proceeding. Even if CME were to appeal a Commission decision, the state court on appeal would not be in the same position as I would be-with the eventual advice of the STB-to determine the scope of CME's interstate, federally authorized operations and, therefore, whether 49 U.S.C. § 14501(a), a federal statute, preempts the Commission from regulating the rates which CME may assess for scheduled, regular-route, inter-city motor-carrier transportation.

The Commission contends that "[a]bstention is ... appropriate [because] there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, this case is not about state law. It is a question of the scope of federal law: the extent to which federal law preempts the Commission's ability to regulate rates. Therefore, I reject this argument.

The Commission also argues: "It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* While the implications for state regulation are potentially far-reaching, I do not consider federal review-including administrative review by the STB-disruptive of state efforts in this case. The Bus Act at 49 U.S.C. 14501(a), by its own words, forbids a state or any of its political subdivisions from developing or implementing a standard for determining the propriety of CME's intrastate rates over its interstate routes. The Bus Act language reads: "No State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to ... the implementation of any change in the rates of such transportation." 49 U.S.C. 14501(a). Moreover, CME's position is that "as a motor carrier of passengers certified by the ICC and STB, it is legally entitled to transport intrastate passengers within Colorado together with its interstate passengers so long as it actually provides substantial interstate service over the interstate route." CME Combined Response and Reply, 5. It contends that

this right to render incidental intrastate passenger transportation arises under 49 U.S.C. § 13902(b)(3) ("ICC Termination Act").

Therefore, CME says, there is no appropriate state forum for dealing with this issue. I agree. The STB, which has specific jurisdiction over federal surface-transportation regulation, is in the best position to interpret both the Bus Act and the ICC Termination Act, statutes with which it is intimately familiar. State efforts-however worthy-would lack the expertise embodied by the STB and by this court in interpreting federal law.

I conclude that the federal government has an important interest in coherently and consistently applying the Bus Act nationally to interstate passenger transporters who also operate intrastate services. The implications for federal policy go beyond CME and its activities under the purview of the Commission. While the Commission has an interest in enforcing its intrastate rate regulations, the larger preemptive question here is whether any state public utilities commission could do so under circumstances of this case. Because a state court would be asked to decide issues of complex, regulatory federal law in an area in which federal interests predominate, the state's interest in the litigation is "not important enough to warrant *Younger* abstention." *Seneca–Cayuga,* 874 F.2d at 714.

Critically, there is the question of explicit federal preemption. CME contends that the preemptive character of the Bus Act is readily, and overwhelmingly, apparent. *See Trailways, Inc. v. State Corp. Com.,* 565 F.Supp. 777, 786–87 (D.Kan.1983) (quoting the Bus Act: "State regulatory restrictions on entry, exit, and/or service frequency ... often have significant adverse impacts on intercity bus operations. Thus, these actions impose an unreasonable burden on interstate commerce and

must be preempted"), citing S.Rep. No. 411, 97th Cong., 2nd Sess. 7–8. *Trailways* -while not binding here-also held that abstention may not occur in a declaratory judgment action premised on Bus Act § 14501(a). *See id.*

The Commission argues in response that *Trailways* dealt with a carrier that possessed federal authorizing certificates but did not also possess state authorizations. There the state sought to regulate the federally regulated carrier without a basis in state law to do so. The Commission concedes that if this were the case here, Commission "regulation of CME would be impossible". But it is not, because CME holds both state and federal certification.

The Commission also contends that *PSC v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) is instructional. In that case, the Commission contends, the carrier sought a determination that it was a *bona fide* federal carrier not subject to the regulatory reach of the commission and that it would win any case commenced by the commission, even though one had not been commenced. *Id.*

From the Commission's view, the circumstances here are the same. I disagree. CME's request for declaratory judgment and injunctive relief *is* for an "ultimate determination of rights," not merely for "for preliminary findings and conclusions intended to fortify the litigant against future regulation." *See id.* at 241, 73 S.Ct. 236. While the Commission and the state undoubtedly have a traditional interest in regulating intrastate motor carriers, this case is less about the state regulating CME than it is about whether federal law preempts such regulation. The Commission contends: "[a]t heart this action concerns the state regulation of a motor carrier holding a CPUC CPCN," so *Younger* abstention is appropriate. Again, I disagree. The Commission concedes that this

case concerns a motor carrier holding *both* state and federal operation authorizations. If the federal authorizations allow for incidental intrastate operation, as CME argues, the state's authority-despite its own certificates-is limited. And without a determination of the scope of federal law under the circumstances, the state's ability to regulate CME is unclear.

Finally, the Commission contends that abstention in *Trans Shuttle, Inc. v. Colorado PUC,* 00–K–1458 (unpublished decision of Senior Judge Kane, December 15, 2000, attached to Defendants' motion), and the line of cases following it, *Trans Shuttle, Inc. v. Colorado PUC,* 24 Fed.Appx. 856 (10th Cir.2001) (not selected for publication in Federal Reporter; not binding precedent under CTA 10 R. 36.3(a)), and *Trans Shuttle, Inc. v. Pub. Util. Comm'n,* 89 P.3d 398 (Colo.2004), apply here. They involved a federally licensed motor carrier that sued the Commission under § 1983, for violation of its right to engage in interstate commerce, and for deprivation of property without due process. That carrier held federal certificates but not state ones, and the Commission assessed civil penalties against it for intrastate operations without state authorization. Senior Judge Kane allowed the state proceedings to run their course and abstained. The Commission argues an even better case for abstention exists here.

However, the *Trans Shuttle* cases did not involve a claim under 49 U.S.C. 14501(a). And the *Trans Shuttle* plaintiffs did not maintain or purport to show that they transported a single passenger in interstate commerce, as CME does here. While none of these three cases is binding upon this Court, I find Senior Judge Kane's careful qualification of his abstention instructive:

> I denied the [Trans Shuttle plaintiffs'] motion [for a TRO], finding it unlikely that Plaintiffs would prevail on their claim that federal law preempted the PUC's authority and power to conduct such hearings or issue such [civil penalty] assessments. My position was based on Title 49, United States Code, which governs railroads and carriers. Chapter 145 of Part B, 49 U.S.C. § 14501 ff., addresses the issue of federal/state relations and delineates the scope of federal authority over intrastate transportation. Section 14501(a) prohibits states or their relevant political subdivisions from enacting or enforcing laws, rules or regulations relating to the scheduling of interor intrastate transportation provided by motor carriers on interstate routes, or relating to the implementation of any change in the rates for such transportation, with the exception of intrastate commuter buses. *Because it did not appear from the Complaint or arguments of the parties that the Colorado state licensing structure would affect interstate commerce in either of these proscribed ways, I allowed the [CPUC civil penalty] assessment actions to proceed.*

*Trans Shuttle,* unpublished 00–K–1458 Order, Dec. 15, 2000, p. 2 (emphasis added). CME contends that had this case been assigned to Senior Judge Kane, given the deference in his Order for claims under 49 U.S.C. § 14501(a), his decision may have resulted in a finding that the Commission's civil penalty assessment had been undertaken in a proscribed way. I agree.

For these reasons, and because abstention is the exception and I must maintain the jurisdiction granted me, I decline to abstain under the *Younger* doctrine.

### E. Exhaustion of Administrative Remedies

 The Commission argues that CME has not exhausted its administrative remedies because it has not completed the adjudicatory process before the Commis-

sion, and that I have discretion to require it to do so. *See Massengale v. Oklahoma Bd. of Examiners in Optometry,* 30 F.3d 1325 (10th Cir.1994). CME says that the Commission has no jurisdiction over its case because the Bus Act, 49 U.S.C. § 14501, preempts state law in the area of intrastate rate fixing for interstate routes. Moreover, it argues, the Supreme Court has long held in public-utilities cases "where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief [under the Declaratory Judgments Act] sought as the only effective way of protecting the asserted right." *PUC v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). I conclude that the Commission's jurisdiction over this case is in question. At this juncture, I decline to dismiss the case for failure to exhaust administrative remedies.

### F. Anti-injunction Act

Finally, the Commission contends this case should be dismissed because the Anti-injunction Act provides: "A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Commission says that implicit in the relief CME seeks is an injunction to stop the currently pending CPUC enforcement proceeding, and that this is banned by the Act.

▆▆ CME argues persuasively that the Anti-injunction Act applies only to proceedings in state court, not to administrative proceedings. *See, e.g., Entergy, Arkansas v. Nebraska,* 210 F.3d 887, 900 (8th Cir.2000) ("An injunction related to an administrative proceeding does not impact the state courts.... Both the text of the

[Anti-injunction Act] and its purpose support the conclusion that the Act applies only to state courts and not to state administrative proceedings.") I agree with CME.

### III. CME's Motion to "Continue Stay"

There exists the ongoing STB proceeding (docket no. MC–F–21008). CME has petitioned the board for a declaratory order determining whether 49 U.S.C. § 14501(a) preempts CPUC from regulating the rates which CME may assess for scheduled, regular-route, inter-city motor-carrier transportation of passengers in Colorado. This is the lynchpin question at issue in this case. The Commission moved to intervene and was allowed to do so. Both parties have submitted evidence to the STB.

CME moves to "continue in effect" the "stay" of proceedings in this action pending determination by the STB of the issues that are here the subject of the motion for preliminary injunction. As a threshold matter, there has never been and is not now a stay of the proceedings of this case. This is exemplified by the fact that these motions are at issue and I have taken argument on them. CME seems to suggest that I "stayed" proceedings to allow for settlement conferences that occurred on May 25, 2004 and August 26, 2004. Those were unsuccessful in that they did not result in a settlement. Notwithstanding the posture of this motion as one *to continue* a stay, and because CME clarified during the hearing that it meant to move for a stay, I treat this as an original motion to stay.

▆▆ In essence, as I have stated previously in this Order, CME argues that I should defer to the STB as an expert agency and allow it to decide the dispute because it concerns the nature and legal

extent of federal agency authorizations. CME contends that the doctrine of exclusive primary jurisdiction is applicable because this action "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Funbus Systems, Inc. v. California Public Utilities Com.*, 801 F.2d 1120, 1129 (9th Cir.1986), citing *United States v. Western Pac R. Co.*, 352 U.S. 59, 64, 77, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (holding that the STB has primary jurisdiction to determine whether operations conducted by an STB-certified carrier are within the scope of its certificate).

> [The] doctrine [of primary jurisdiction] seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime. No fixed formula exists for the doctrine's application. Rather, the question in each instance is whether a case raises issues of fact not within the conventional experience of judges, but within the purview of an agency's responsibilities; whether the limited functions of review by the judiciary are more rationally exercised by preliminary resort to an agency better equipped than courts to resolve an issue in the first instance; or, in a word, whether preliminary reference of issues to the agency will promote that proper working relationship between court and agency that the primary jurisdiction doctrine seeks to facilitate.

*Pharmaceutical Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003) (internal citations removed).

Here, the *extent* and *nature* of CME's *interstate* operations present central questions of fact and law not within my conventional experience, but within the specialized expertise of the STB. My limited functions of review are more rationally informed by preliminary resort to the STB's expertise. And preliminary reference of this issue to the STB will promote the relationship between court and agency that the primary jurisdiction doctrine seeks to maintain.

The Commission contends that a nexus between interstate transport and regularly scheduled, *bona fide* operations must exist for lawful interstate service under federal authority. And whether such nexus exists requires no special expertise or policy consideration beyond the competency of this Court or the Commission itself.

CME concedes that it is true that what constitutes interstate passenger transportation when rendered in a single state-here, Colorado-has been the subject of significant litigation. *See, e.g., Executive Town & Country Services, Inc. v. Atlanta*, 789 F.2d 1523 (11th Cir.1986). However, it contends, the provisions authorizing such operations were carried forward by the ICC Termination Act of 1995, which is now codified at 49 U.S.C. 13902(b)(3):

> A motor carrier of passengers that is registered by the Secretary under subsection (a) is authorized to provide regular-route transportation entirely in one State as a motor carrier of passengers if such intrastate transportation is to be provided on a route over which the carrier provides interstate transportation of passengers.

Therefore, the only present requirement for transporting intrastate passengers on interstate routes is that regular-route carriers provide substantial interstate transportation over their routes. Hence, CME argues, an STB determination of what satisfies the requirement that CME renders "substantial interstate service" will aid me materially in reaching my conclusions about this case. I agree. As I have said above, the question whether CME engages

in substantial interstate service is the key question of fact and law. It is best decided in the first instance by the STB under federal law.

Because I have discretion to stay proceedings pending before me for the purpose of economy of time and effort, *see, e.g., Pet Milk Co. v. Ritter,* 323 F.2d 586 (10th Cir.1963), I stay this case pending a final decision of the STB.

ACCORDINGLY, IT IS ORDERED THAT:

1) DEFENDANTS GREGORY E. SOPKIN, POLLY PAGE, JIM DYER, and THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO's motion to dismiss is GRANTED IN PART as it applies to the Commission itself, and DENIED IN PART as it applies to the individual Commissioners; and

2) PLAINTIFF EAST WEST RESORT TRANSPORTATION, LLC's motion to stay (originally described as a motion to continue stay) is GRANTED.